## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FRANCESCO ZANGHI, and ZANGHI LLC,<br><br>                    Plaintiffs,<br>          v.<br><br>PIERGRAZIANO RITELLA,<br>GIUSEPPE CAVALLARO,<br>ALESSANDRO VACCA,<br>FUTURA HOSPITALITY LLC,<br>STUDIO LEGALE CAVALLARO,<br>GIOIA E VITA S.r.l.,<br><br>                    Defendants. | Case No.:<br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1.      This is a securities fraud and RICO action on behalf of Plaintiffs Francesco Zanghi and Zanghi LLC ("Plaintiff") who entered in several investment contracts with companies owned and managed by Defendants Piergraziano Ritella ("Ritella") and Alessandro Vacca ("Vacca"). Plaintiff's investment in Ritella's La Rossa project was promoted by Defendants Giuseppe Cavallaro  ("Cavallaro") and Studio Legale Cavallaro ("SL Cavallaro").

2.      La Rossa is a franchising restaurant business of Roman-style Pizzerias based on Chef Callegari's proprietary method of pizza making. Cavallaro and SL Cavallaro worked on the deal for the acquisition of the rights of the proprietary method and on the registration of the trademark "La Rossa." Ritella and his agents drafted the business plan for the La Rossa New York.

3.      Plaintiff invested substantial funds between May and December 2018 ("Investment Period") in the La Rossa project.  In June 2019, Plaintiff unveiled Defendants' scheme used to defraud Plaintiff and other victims for more than $1,000.000.

## SUMMARY OF THE ACTION

4.     During the Investment Period, Defendants violated the Securities Act of 1933 (the "1933 Act") and Securities Exchange Act of 1934 (the "1934 Act") by issuing materially false statements and misleading information in connection with the purchase and sale of unregistered securities in the La Rossa project with the intent to defraud Plaintiff out of money.

5.     Specifically, Defendants concealed and misrepresented the financial status of several companies involved in La Rossa—such as, Ritella's June 11, 2018 email purporting to represent an investment of $165,000. In June 2019, Plaintiff discovered that investment never occurred and the document representing the $165,000 transaction is believed to have been forged to induce Plaintiff to invest in La Rossa.

6.     Plaintiff was relying on his Italian attorney Defendant Cavallaro who introduced Plaintiff to Ritella and La Rossa; who had represented Plaintiff and his family for many years; and who made personal guaranties about Ritella and La Rossa.  Cavallaro informed Plaintiff that SL Cavallaro was working on "registering the brand worldwide" and that La Rossa was planning openings in New York, Miami, and Dubai.   In June 2019, Plaintiff discovered that the "La Rossa" trademark has never been registered in any jurisdiction.

7.     Defendants are liable also under the Racketeer Influenced and Corrupt Organization Act ("RICO") for committing wire fraud and money laundry. Specifically, Defendants Ritella and Vacca offered Plaintiff by means of electronic communication to acquire Giotto, a restaurant business in Miami. Plaintiff wired the funds on or about December 6, 2018. However, Defendants did not acquire Giotto but transferred Plaintiff's funds to Defendant Gioia e Vita, one of the corporate members of Ritella's criminal enterprise.

## JURISDICTION AND VENUE

8.      Jurisdiction is conferred by § 27 of the 1934 Act.  The claims asserted herein arise under §12 of the 1933 Act, §§10(b) and 20 of the 1934 Act, and SEC Rule 10b-5.  Venue is proper in this district pursuant to § 27 of the 1934 Act. Many of the false and misleading statements were made in or issued from this district.

9.       This Court has original jurisdiction of this civil action pursuant to 28 U.S.C. § 1331 and 18 U.S.C. 1964(c).  This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.  The claims asserted herein arise under 18 U.S.C. § 1962.

10.      Venue is proper in this judicial district because it is where a substantial part of the events giving rise to Plaintiff's claim occurred and substantial part of property that is the subject of the action is situated. 28 U.S.C. § 1391(b). Venue is also proper under 18 U.S.C. § 1965(a) because Defendants transact their affairs in this district.

11.      This Court may exercise specific or general personal jurisdiction over Defendants because Defendants transact business within the State and this action arises out of that business, or they are essentially at home in the State of New York. Plaintiffs and Defendants entered into various agreements (the "Agreements").  The Agreements were entered in New York and/or contemplated performance in New York.  The U.S. Agreements contain a "Choice of Law; Venue and Forum" clause declaring that "[a]ll parties consent to the exclusive jurisdiction of all state and federal courts of record situated in the County of New York of State of New York."

## PARTIES

12.     Plaintiff Francesco Zanghi purchased, and was induced to purchase in reliance to Defendants' false statements, misrepresentation, and omissions, investment contracts and was damaged as a result of defendants' wrongdoing as alleged in this complaint.

13.     Plaintiff Zanghi LLC is a New York limited liability company owned and operated by Plaintiff Francesco Zanghi for purposes of purchasing investment contracts.

14.     Defendant Piergraziano Ritella ("Ritella") is, and at all relevant times has been, the Managing Member of Futura Hospitality LLC, a New York limited liability company ("Futura"). Ritella made false and misleading statements to induce Plaintiff's investment.  Futura has been the recipient and the sender of several financial transactions in the amount over $10,000.00 made from this jurisdiction by Ritella and Vacca furthering and participating in the fraudulent scheme. Defendants knew that the property involved in the domestic and international financial transactions represented the proceeds of their securities and wire frauds.

15.     Defendant Alessandro Vacca ("Vacca") is the Managing Member of Gioia e Vita S.r.l., an Italian *Società a Responsabilità Limitata* ("Gioia e Vita")[1]. Vacca made false and misleading statements to induce Plaintiff's investment.  Since May 2018, Ritella has represented Vacca as his business partner.  At all times, Vacca has acted on behalf of and in concert with Ritella. Gioia e Vita has been the recipient and the sender of several financial transactions in the amount over $10,000 made from this jurisdiction by Ritella and Vacca furthering and participating in the fraudulent scheme. Defendants knew that the property involved in the domestic and international financial transactions represented the proceeds of their securities and wire frauds.

---

[1] *Società a Responsabilità Limitata* or *S.r.l.* is the Italian equivalent of limited liability company.

16.     Defendant Giuseppe Cavallaro ("Cavallaro") is the Managing Partner of Studio Legale Cavallaro ("SL Cavallaro").  Cavallaro made false and misleading statements to induce Plaintiff's investment. Cavallaro and SL Cavallaro have represented Plaintiff prior to Plaintiff's investment in the La Rossa project.  Since May 2018,  Cavallaro and SL Cavallaro have transacted business in the State of New York and State of Florida.

## FRAUD AND DECEPTION

17.     Defendants are liable for (i) employing device, scheme, and artifice to defraud Plaintiff; (ii) making untrue statement of material fact and to omit to state a material fact; and (iii) engaging in acts, practices, and course of business which operated as fraud and deceit upon Plaintiff.  The actual damages caused by the fraudulent inducement and deception amounts to more than $500.000.

18.     Defendants' fraudulent inducement and deception was a success, as it: (i) deceived Plaintiff regarding Defendants' prospects and business; (ii) artificially inflated the price of the investment; (iii) cause Plaintiff to purchase the investment; and (iv) permitted the Individual Defendants to collect proceeds for over $500,000.00. Defendants purposefully deceived Plaintiff for their own economic benefit.

19.     The investment purchased by Plaintiff is defined as security because he had an expectation of profits solely from the work of others and had no prior experience in the restaurant franchising business.

# BACKGROUND

20.     La Rossa is the project of establishing Roman-style Pizzerias founded by Ritella. Ritella has market himself as "an experienced Italian chef and restauranteur."  In actuality, Ritella is an experienced fraudster who has deceived many people in the United States and Italy, including Plaintiff, by, *inter alia*, counterfeiting documents, issuing false statements and misrepresentations.

21.     Ritella developed La Rossa by creating several limited liability companies. Ritella's holding company is Futura Hospitality LLC ("Futura"), which is the Managing Member in three co-participated subsidiaries: (a) Hello Lafayette LLC ("Hello Lafayette" or "La Rossa New York");  (b) Callegari's Pizza Romana LLC ("Callegari's Pizza Romana" or "La Rossa brand"); and (c) La Rossa Miami LLC ("La Rossa Miami").

22.     Each LLC has also Limited Members. Plaintiff is a Limited Member in all three.

23.     In June 2018, Plaintiff was induced to enter into an agreement with Futura to purchase 15% of La Rossa brand for $70,000—Cavallaro informed Plaintiff that SL Cavallaro was working on registering La Rossa worldwide.  In June 2019, Plaintiff discovered that the "La Rossa" trademark has never been registered in any jurisdiction.

24.     On the same day, Plaintiff also entered into an agreement with Futura to purchase 33.3% of La Rossa Miami for $100,000 in reliance of Ritella's June 11 email representing the investment of $165,000 for the equipment of La Rossa Miami.  In June 2019, Plaintiff discovered that the transaction never occurred because the Landlord had gifted the equipment to La Rossa as it was left from the previous tenant.

25.     In August 2018, Futura sold Plaintiff units in La Rossa NY that have been misappropriated from another investor who wished to leave the enterprise but was never compensated for his shares—thereby breaching the "clear title" representation in the Purchase Agreement.  Defendants also misrepresented the financial status of La Rossa NY, the tax return of

which for 2017 shows gross sales for more than $4,000 (when the business plan was projecting for

2018 gross sales for more than $2 million dollars), debts for more than $200,000 and sales tax

liability of more than $44,000 (when the business plan was reporting none).  Plaintiff received the

2017 La Rossa NY tax return in May or June 2019.

26.     Each transaction is reviewed in details.

## LA ROSSA MIAMI & CALLEGARI'S PIZZA ROMANA

27.     On May 8, 2018, Cavallaro wrote the following post on Facebook:

The Giuseppe Cavallaro and Associates 's law firm, specialized in the
internationalization of small, medium and large Companies (Listed and unlisted
companies), land in the USA through operations including assistance and the
drafting of very important agreement involving a company of American law and
the famous Italian Chef Stefano Callegari (famous inventor of the "trapizzino").
The agreement has the purpose of opening a large restaurant chain with offices
between New York and Miami, with the prospect of further growth in the medium
to long term. This agreement (already signed in the Italian version on April 20,
2018), will be signed directly to Miami in the original language and made executive
in the date of May 3, 2018, with the direct participation of the lawyer Giuseppe
Cavallaro. The drafting of this important agreement was also attended by Senior
Associate Giorgio Valentini, Simone Polce, Emanuele Patti, and Francesco
Alaimo, as well as the Junior Associate Gianluca Alocci, whose participation was
relevant both in the negotiation phase and in the drafting of the preliminary and
consequently of the final agreement.
This important agreement allows the company of American law to launch the brand
LA ROSSA in the territory of the United States, registering the following brand
CALLEGARI'S PIZZA ROMANA. The Chef Callegari also cedes the use,
management and exploitation of its rights of image, throughout the territory of the
United States of America for the duration of 4 years to date of the signing of the
agreement.
With this important deal, the Chef Callegari sells exclusively to the company the
use of the pizza products according to the "Callegari's method" with a consequent
prohibition to carry out, in favor of other subjects or companies an in any form,
consultancy activities for projects Pizza in the territory of the United States.
The agreements developed in the territory of the United States and the
consequential judicial assistance and out-of-court, have brought the lawyer
Giuseppe Cavallaro to the decision to open an operational desk both in New York
and in Miami, thus widening the turnover in the United States; This new business
is to be added to the one developed in the whole Middle East territory, especially
Dubai and Doha, And in Italy and in particular in Rome, Milan, Bologna, as well
as in the centre of the south with the opening of operational offices in Calabria,
Sicily, Puglia, and Campania.

28.     This action against Cavallaro and SL Cavallaro stem from the contacts with the State of New York stated hereabove as well as from payments received from Futura for Plaintiff's investment and from the USPTO application for the La Rossa trademark.

29.     In May 2018, Cavallaro introduced Plaintiff to La Rossa and promoted the initial investment. Cavallaro presented La Rossa as an international project with planned openings in New York, Miami, and Dubai. Cavallaro informed Plaintiff that SL Cavallaro was registering the "La Rossa brand" worldwide.  Cavallaro also introduced Plaintiff to Ritella who was depicted as the experienced restaurant owner of Terrazza Barberini in Rome, Italy, who went  to the United States to develop La Rossa.

30.     During the meeting, Cavallaro called Ritella in New York City introducing Plaintiff as a potential investor. At all times, Plaintiff was under the impression that Cavallaro was his legal representative in the La Rossa deal. Plaintiff's reliance on Cavallaro's fiduciary duties was justified because Cavallaro had previously been Plaintiff's attorney.

31.     On May 22, 2018, Cavallaro sent Plaintiff by email the Lease Agreement for the Miami location. The Lease Term began on June 1, 2018, but rent liability would have started to accrue from September 1, 2018.  Plaintiff was informed that the three months of free rent were granted for purposes of renovating the location. La Rossa Miami was scheduled to open in August 2018.

32.     On the same day, Cavallaro sent Plaintiff by email La Rossa business plan, which disclosed an initial investment for La Rossa NY of $360,000 of which "Mr. Ritella is the largest investor in the company." The expected opening for La Rossa NY was July 2018 with projected earnings of 2,124,000.00 for 2018.

33.     On May 24, Ritella expressed to Plaintiff the intention to open a restaurant in Rome after Miami. On May 26, 2018, Ritella was already pitching New York restaurants to Plaintiff.

34.     On. May 28, Plaintiff arrived in New York City to meet with Ritella.  On May 30, Ritella on behalf of Plaintiff formed Zanghi LLC  to be used as vehicle for the investment contracts.

35.     On May 31, 2018, Plaintiff and Ritella went to visit the La Rossa location in Miami. During the visit, Ritella showed Plaintiff the renovations decided for the Miami location.

36.     On June 4, 2018, Plaintiff received the draft of the Purchase Agreement of $100,000.00 in exchange for 33.3% of La Rossa Miami. Plaintiff requested assurances that the $100,000.00 would have been invested in the La Rossa location.  Ritella assured Plaintiff that the funds were going to be invested in renovating the Miami location.  Ritella also assured Plaintiff that the Miami location was going to be operational by August 2018.

37.     For purposes of evaluating the investment price, Plaintiff requested from Ritella the list of investments already made on the Miami location.

38.     On June 11, 2018, Ritella sent an email to Plaintiff and Cavallaro with two attachments.  The first attachment was the Lease Agreement for the Miami location representing the investment of $13,000.00 for the security deposit. The second attachment was the Equipment Purchase Agreement showing the investment of $165,000.00.

39.     On June 19 or few days prior to closing the La Rossa Miami deal and La Rossa brand deal, Plaintiff and Cavallaro met again upon Plaintiff solicitation because Plaintiff was seeking additional assurances about Ritella and La Rossa.  Cavallaro made personal assurances and guarantees about Ritella and the La Rossa project.

40.     On June 21, Plaintiff Zanghi LLC entered into two agreements with Futura: (1) $100,000.00 in exchange for 33.3% of La Rossa Miami; and (2) $70,000.00 in exchange for 15% of La Rossa brand.

41.     Plaintiff wired the funds on June 28, 2018.

42.    In   June   2019,   Plaintiff   discovered   Defendants'   false   statements   and misrepresentations.

43.    The "La Rossa brand" has never been registered in any jurisdiction.  On June 5, 2018, Cavallaro and SL Cavallaro filed the trademark petition with USPTO.  On October 1,  SL Cavallaro received the USPTO's Office Action requiring a response within six (6) months.  On May 1, 2019, USPTO sent SL Cavallaro the Notice of Abandonment for failure to respond to the October 1 Office Action. Plaintiff invested in $70,000 in the La Rossa brand in reliance of Defendant Cavallaro's assurances that SL Cavallaro was registering La Rossa worldwide.

44.    Cavallaro and SL Cavallaro received compensation or commissions from Futura and Ritella.  Cavallaro and SL Cavallaro intentionally and purposefully took advantage of Plaintiff's trust in order to promote Plaintiff's investment in La Rossa.  By failing to disclose to be a Ritella's agent and by personally assuring the La Rossa project, Cavallaro and SL Cavallaro induced Plaintiff to invest in La Rossa without any additional due diligence—because Plaintiff believed that Cavallaro and SL Cavallaro were going to review the deal on his behalf—that would have unveiled several false statements and misrepresentations of Defendants.

45.    For example, the Miami location was not in compliance with local regulations on the sewage system. The Landlord granted the three months of free rent to bring the location up to date with the code. Defendant Ritella had knowledge of this issue on or before June 10 and intentionally failed to disclose it to Plaintiff.  Defendants Cavallaro and SL Cavallaro had knowledge or were reckless in failing to know the regulatory issues of the Miami location and failed to disclose it to Plaintiff.  Plaintiff would not have purchased the investment contracts at the price he paid, or at all, if he had been aware of the compliances issues of La Rossa Miami because the price had been artificially and falsely inflated by defendants' false and misleading statements.

46.     Additionally, Plaintiff discovered that Ritella's June 11 Email—containing evidence of $165,000 transaction for the equipment of La Rossa Miami—was false and misleading. The $165,000 transaction never occurred and the document is believed to have been forged.  Defendant Ritella submitted the false transaction by email with the intent to induce Plaintiff's investment. Defendants Cavallaro and SL Cavallaro had knowledge or were reckless in failing to know that the $165,000 transaction never occurred but failed to disclose it Plaintiff. Plaintiff would not have purchased the investment contracts at the price he paid, $100,000, or at all, if he had known that the $165,000 transaction did not occur and that Defendants invested only $13,000 because the price had been artificially and falsely inflated by defendants' false and misleading statements.

47.     Defendants did not protect or develop La Rossa bran nor renovate the Miami location but refuse to return Plaintiff's investment.

## HELLO LAFAYETTE
## PART I

1.     On May 22, Defendant Cavallaro sent Plaintiff by email La Rossa business plan with cost analysis and financial projections of the La Rossa's first location, La Rossa NY.

2.     The business plan represented the opening date for July 2018 and projections for over $2 million dollars in 2018.

3.      The business plan represented an initial investment of $360,000 of which Ritella was the largest investor.

4.     Between May and August, Ritella promoted Plaintiff's investments in several New York location  by means of electronic communication.

5.   On August 3, Ritella sent Plaintiff a news article about La Rossa NY[2].

---

[2] https://ny.eater.com/2018/8/3/17647814/la-rossa-stefano-callegari-roman-pizza-nyc

6.      On August 6, 2018, Plaintiff entered into a Purchase Agreement for $85,000.00 in exchange for 10% of La Rossa NY with Futura and Ritella.

7.      The Purchase Agreement represented that Futura owned 63% of Hello Lafayette.

8.      The Purchase Agreement also represented the absence of current, pending, threatened, or anticipated legal action affecting the LLC Interests.

9.      In 2019, Plaintiff discovered several false statements and misrepresentations in connection with the La Rossa business plan and the Purchase Agreement.

10.      Cavallaro and SL Cavallaro did not make any due diligence on the La Rossa deal or fail to inform Plaintiff of the financial status of Ritella's enterprise.

11.      Cavallaro and SL Cavallaro failed to discover or disclose to Plaintiff that although Ritella's business plan was projecting gross sales for over $2 million dollars in 2018, La Rossa NY' 2017 tax return was recording gross sale for $4,000. Defendants Ritella, Vacca, and Futura failed to inform Plaintiff about the financial situation of La Rossa NY with the intent to induce Plaintiff's investment.  Had Plaintiff known about La Rossa NY true financial situation, he would have never invested in Ritella's project.

12.       Cavallaro and SL Cavallaro also failed to discover or disclose to Plaintiff that La Rossa NY had more than $200,000 of indebtedness and more than $44,000 in sales tax liability with the State of New York.  Defendants Ritella, Vacca, and Futura failed to inform Plaintiff about the financial situation of La Rossa NY with the intent to induce Plaintiff's investment.  In the Purchase Agreement, Defendants misrepresented the absence of current, pending, threatened, or anticipated legal action affecting the LLC Interests. Had Plaintiff known about La Rossa NY true financial situation, he would have never invested in Ritella's project.

13.      Cavallaro and SL Cavallaro also failed to discover or disclose that Futura did not own 63% of La Rossa NY on August 6, 2018.  On August 2, La Rossa NY's 2017 tax return

asserted that Futura held only 51% of La Rossa.   Defendants Ritella, Vacca, and Futura misrepresented Futura's ownership to Plaintiff because Futura never paid for the additional shares sought to be purchased from another investor and therefore did not have title over those shares. Because their failure to pay the other investor, Defendants Ritella, Vacca, and Futura also breached the Purchase Agreement's representation about holding clear title of the LLC Units.

14.     Cavallaro and SL Cavallaro also failed to discover or disclose that the La Rossa NY's lease was subject to eviction even without any fault from the tenant:

15.     La Rossa NY's Lease Agreement Rider, Section 87 "CROSS-DEFAULT" reads as follows:

> A related entity of Tenant is presently the tenant of certain premises in the building known as 79 Clinton Street, New York, NY 10012 (the "Clinton Lease") under a lease dated as of September 1, 2017 and made to it as Tenant. Tenant hereby agrees as an inducement for Landlord to enter into this Lease, that if for any reason either this or said Clinton Lease shall terminate prior to the expiration date set forth in said lease, then in such event, both said leases shall terminate simultaneously. Additionally, if there shall exist a default in either this Lease or the said other lease, such default shall be deemed a default under both leases under which default(s) the Landlord or the landlord of the other lease may take appropriate action.

Plaintiff has no investments in the "related entity."   Before May 2019, Plaintiff has never been made aware by Defendants that the La Rossa NY could be evicted because of the eviction of another business before May 2019.

16.     Defendants Ritella, Vacca, and Futura failed to inform Plaintiff of the Cross-Default Clause with the intent to induce Plainitff's investment. Had he known about the cross-default clause prior to the execution of the Purchase Agreement, Plaintiff would not have made the investment in La Rossa NY.

17.     Cavallaro and SL Cavallaro failed to discover or disclose to Plaintiff that the initial investment for the La Rossa NY was not in the amount of $360,000 and that Ritella was not the "largest" investor.  On other documents, Ritella disclosed that the investment was approximately

$340,000. Defendants Ritella, Vacca, and Futura misrepresented the current financial status of La Rossa NY to induce Plaintiff's investment. Had he known, Plaintiff would have never invested with Defendants.

18.     Cavallaro and SL Cavallaro failed discover or disclose to Plaintiff that the opening date of July 2018 was factually impossible.

19.     At that time, Ritella and Plaintiff had established a friendship relationship—or so Plaintiff thought.  In order to bring La Rossa NY to opening, Ritella asked Plaintiff to lend him money that would have been returned after the opening.  Plaintiff lent Ritella more than $120,000 but Ritella has never returned the funds.  After June 2019, Plaintiff believes that the loan proceeds may have been used also for other purposes than La Rossa NY.

## SFORNO

20.     On October 23, 2018, Plaintiff entered into a preliminary Agreement for €72,000.00 in exchange for 24% of Sforno S.r.l., the Pizzeria in Rome, Italy ("Sforno"), with Gioia e Vita and Vacca promoted by Ritella and Vacca.

21.     The Agreement required Gioia e Vita to acquire Sforno by January 2019.  The Agreement divided Plaintiff's consideration in three payments:

(a)     1st Payment: Euro 15.000,00 (fifteen thousand/00) due at the execution of the agreement and no later than October 26, 2018;

(b)     2nd Payment: Euro 25.000,00 (twenty-five thousand/00) due at Closing;

(c)     3rd Payment: Euro 32.000,00 (thirty-two thousand/00) by one year from Closing;

22.     Plaintiff duly made the first payment.

23.     Ritella and Vacca induced Plaintiff to make also the second prior schedule misrepresenting the need of the funds to apply for a loan to be used for the purchase of Sforno.

Plaintiff has never received the loan application documents notwithstanding the multiple requests advanced by Plaintiff.  Notwithstanding Plaintiff's additional payment that was due at Closing, Plaintiff has never received anything from the bargain.

24.     Vacca and Ritella failed to acquire the Italian restaurant by January 2019 as dictated by the preliminary Agreement.  Vacca and Ritella failed to return Plaintiff's funds.  On June 19, 2019, Cavallaro and SL Cavallaro on behalf of Defendants admitted that the contract has been terminated because of Gioia e Vita's failure to purchase Sforno by January 2019.

25.     This Agreement is included in this action because it is part of the same issue—as defined by the Securities Act Release 4434—and therefore integrated as part of the same plan of financing made at or about the same time and for the same general purpose of investing in Roman-style Pizzerias.

### GIOTTO

26.     On November 22, 2018, SL Cavallaro on behalf of Defendants submitted to Plaintiff two additional investment contracts.  The first Agreement was for the sale of additional units in La Rossa NY, which was executed by the Plaintiff.  The second Agreement was for the sale of additional units in La Rossa Miami, which was not executed by the Plaintiff.

27.     Plaintiff and Ritella agreed for Plaintiff's investment of $60,000.00, which according to Ritella were going to be used for purchasing Giotto, an Italian pizzeria in Miami. Plaintiff would have received in exchange an additional 20% in La Rossa NY and 22% in New Company that was going to operate Giotto.

28.     On December 6 , Plaintiff transferred the $60,000 to Futura's bank account.

29.     Defendants did not acquire Giotto.  Defendants wired the funds to Gioia e Vita knowing that the financial transaction represented proceeds from defrauding Plaintiff.

## COUNT I
*For violation of §10(b) of the 1934 Act and Rule 10b-5*
*Against All Defendants*

30.     Plaintiff incorporates ¶¶ 1-29 by reference.

31.     Defendants disseminated or approved the false statements, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statement, in light of the circumstances under which they were made, not misleading.

32.     The Purchase Agreements are securities because Plaintiff had an expectation of revenue solely from the work of others: Plaintiff had no prior experience with the restaurant franchising business and acquired a minority, Limited Membership in all La Rossa's companies.

33.     The following is a non-inclusive list of the false statements and misrepresentations made by the Defendants:

        (a)     Defendant Cavallaro informed Plaintiff that SL Cavallaro was registering the "La Rossa brand" worldwide. The "La Rossa brand" has never been registered in any jurisdiction from when Plaintiff invested $70,000 in La Rossa brand to today. The USPTO application has been abandoned for failure to respond to the Office Action within the six (6) month period.

        (b)     Cavallaro and SL Cavallaro had a duty to disclose but failed to disclose compensation or commissions from Futura for Plaintiff's investment. Plaintiff reasonably relied on Cavallaro's fiduciary duties as his legal representative in this deal given their longstanding friendship relationship and prior professional engagements between Plaintiff and SL Cavallaro. By failing to disclose to be Ritella's agent, Plaintiff was induced not to perform independent review and due diligence of the La Rossa deal. Cavallaro and SL Cavallaro's failure to disclose their

agency relationship with Ritella materially impaired Plaintiff's decision making process in evaluating the investment and its price.

(c)     Cavallaro and Ritella failed to disclose the regulatory issues of the Miami location that was known to them since at least June 10, 2018. Cavallaro and Ritella purposefully, knowingly, or recklessly concealed the regulatory issues of the Miami location. Plaintiff would not have purchased the investment contracts at the price he paid, or at all, if he had known about the regulatory issues of the Miami location.

(d)     Cavallaro and Ritella's business plan contained the following false statements, misleading information and/or omissions that impaired the Plaintiff's decision making process:

1.   The New York location that was scheduled to open in July 2018 had revenue projections for 2018 of $2,124,000.00 whereas La Rossa NY's 2017 tax return disclosed gross sales for $4,809.00. Cavallaro and Ritella purposefully, knowingly, or recklessly concealed or failed to disclose Hello Lafayette's current financial status with the intent to induce Plaintiff's investment. Plaintiff would not have purchased the investment contracts at the price he paid, or at all, if he had known about the current financial situation of Hello Lafayette.

2.   The business plan failed to disclose any indebtedness whereas La Rossa NY's 2017 tax return represented $200,900 of indebtedness. Plaintiff would not have purchased the investment contracts at the price he paid, or at all, if he had known about the current financial situation of Hello Lafayette.

3.   The business plan failed to disclose that the company had been held liable to the State of New York for $44,254.37 in sales taxes. Plaintiff would not have purchased the investment contracts at the price he paid, or at all, if he had known about the current financial situation of La Rossa NY.

4.    The business plan asserts that the initial investment was for $360,000 with Ritella being "the largest investor in the company" whereas Ritella disclosed in other documents that the investment was approximately $340,600." Ritella is and was not the largest investor of his project.

(e)    Ritella falsely assured that Plaintiff's initial investment of $100,000.00 was going to be used for renovating the Miami location.  The Miami location has never been renovated. Plaintiff would not have purchased the investment contracts at the price he paid, or at all, if he had known that Ritella was not going to invest Plaintiff's money in renovating the location.

(f)    The June 11 Email contained false evidence of an investment in the amount of $165,000.00 for the equipment of La Rossa Miami. The transaction has never been made and the document is believed to have been forged. Plaintiff would not have purchased the investment contracts at the price he paid, or at all, if he had known that Futura did not invest $165,000.00 for the equipment.

(g)    The August 6 Purchase Agreement for La Rossa NY misrepresented that Futura (Ritella and Vacca) owned 63% of the New York location. La Rossa NY's 2017 tax return dated August 2 disclosed that Futura owned only 51%.

(h)    The August 6 Purchase Agreement also misrepresented the absence of current, pending, threatened, or anticipated legal action affecting the LLC Interests by failing to disclose the pending and anticipated the  $44,254.37 New York sales tax liability. Plaintiff would not have purchased the investment contracts at the price he paid, or at all, if he had known about the current financial situation of Hello Lafayette.

(i)    Defendants also failed to disclose that La Rossa NY's Lease Agreement contained a Cross-Default Clause, which allows the Landlord to evict La Rossa for the failure to

pay rent of another business in another location.  Plaintiff would not have purchased the investment contracts at the price he paid, or at all, if he had known about the Cross-Deault Clause.

(j)      Ritella, Cavallaro, and the business plan misrepresented the opening date of the New York location as of July 2018. Ritella asked Plaintiff to lend money for the renovation expenses of the New York location.  Upon belief and knowledge, Ritella spent the funds for other purposes than La Rossa NY.  Plaintiff's loan amounts to more than $120,000.00.  Ritella has never paid back the loan.  Plaintiff would not have lent additional funds, if he had known about the current financial situation of La Rossa NY.

(k)      Ritella and Vacca induced by misrepresentation Plaintiff to disburse additional Euro 25,000 in connection with the purchase of Sforno before the Closing date. Defendants informed Plaintiff that the additional funds were necessary to apply for a loan in Italy with which Defendants would have purchased Sforno.  Upon belief and knowledge, the loan or the requirement have been misrepresented by Defendants Ritella and Vacca who have been using Plaintiff's funds for other purposes than purchasing Sforno.

(l)      The November 22 transaction (consisting in the acquisition of additional 20% of the New York location and 22% of Giotto in Miami in exchange for $60,000.00) was fraudulent in that Defendants did not use the funds to purchase Giotto but transferred Plaintiff's funds to Gioia e Vita in Italy knowing that the financial transaction represented proceeds defrauded to Plaintiff.

34.      Defendants are jointly and severally liable for violating  §10(b) of the 1934 Act and Rule 10b-5 in that they:

(a)      Employed devices, schemes and artifices to defraud;

(b)     Made untrue statements of material facts or omitted to state material facts necessary in order to make the statement made, in light of the circumstances under which were made, not misleading; or

(c)     Engaged in acts, practices and a course of business that operated as a fraud or deceit upon Plaintiff in connection with the purchases of investment contracts.

35.     Plaintiff has suffered damages in that, in reliance on Defendants' false statements, misrepresentations and omissions, he paid artificially inflated prices for the investment contracts causing Plaintiff significant, specific damage.  Plaintiff would not have purchased the investment contracts at the price he paid, or at all, if he had been aware that the price had been artificially and falsely inflated by defendant's false and misleading statements.

**COUNT II**
*For violation of §20(a) of the 1934 Act*
*Against All Defendants*

36.     Plaintiff incorporates ¶¶ 1- 35 by reference.

37.     The Individual Defendants acted as controlling persons of the Company Defendants within the meaning of §20(a) of the 1934 Act. By virtue of their positions with the Companies, and ownership of the Companies' units, the Individual Defendants had the power and authority to cause the Companies to engage in the wrongful conduct complained of herein. By reason of such conduct, Defendants are jointly and severally liable pursuant to §20(a) of the 1934 Act.

**COUNT III**
*For violations of § 12(1) of the 1933 Act*
*Against All Defendants*

38.     Plaintiff incorporates ¶¶ 1- 37 by reference.

39.     Defendants offered and sold unregistered securities in violation of Section 5 of the 1933 Act.

40.     The Purchase Agreements are securities because Plaintiff had an expectation of revenue solely from the work of others: Plaintiff had no prior experience with the restaurant franchising business and acquired a minority, Limited Membership in all La Rossa's companies.

41.     Defendants are "sellers" within the meaning of Section 12(1) because Defendants solicit the purchase of unregistered securities, motivated at least in part by a desire to serve his own financial interests or those of the securities owner.

(a)     Defendants Cavallaro and SL Cavallaro solicited the initial investment in La Rossa brand and La Rossa Miami receiving financial compensation or commissions;

(b)     Defendant Ritella solicited Plaintiff's investment in the La Rossa brand, La Rossa Miami, La Rossa New York, Sforno S.r.l., and Giotto and received compensation or commissions;

(c)     Defendant Ritella and Vacca solicited Plaintiff's investment in Sforno S.r.l.. and received compensation or commissions;

(d)     Defendant Ritella and Vacca solicited Plaintiff's investment in Giotto and received compensation or commissions;

(e)     Defendant Futura sold securities to Plaintiff;

(f)     Defendant Cavallaro and SL Cavallaro solicited Plaintiff's investment in Sforno S.r.l. and received compensation or commissions;

(g)     Defendant Gioia e Vita S.r.l. solicited the sale of securities of Sforno S.r.l. and entered into a preliminary agreement for the purchase of securities with Plaintiff, which securities were never delivered—Plaintiff's payment notwithstanding.

42.     Defendants are jointly and severally liable to Plaintiff as a result of violating Section 12(1) of the 1933 Act.

43.     Exemptions are not available because Defendants offered or sold more than $1,000,000.00 as part of an issue of securities of the same class at or about the same time that were part of a single plan of financing and for the same general purpose and failed to comply with disclosure requirements.  Plaintiff had no ability to obtain vital, material information about the investment prior to making the investment and the disclosures made by Defendants contained several false statements, omissions, and representations that materially impaired Plaintiff's decision making process.

**COUNT IV**
*For violations of § 12(2) of the 1933 Act*
*Against All Defendants*

44.     Plaintiff incorporates ¶¶ 1- 43 by reference.

45.     Defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statement, in light of the circumstances under which they were made, not misleading.

46.     Defendants knew or in the exercise of reasonable care could have known, of such untruth or omission.

47.     Defendants are jointly and severally liable to Plaintiff for violating Section 12(2) of the 1933 Act.

**COUNT V**
*For violations of RICO, 18 U.S.C. § 1962(c))*
*Against All Defendants*

48.      Plaintiff incorporates ¶¶ 1- 47 by reference.

49.      This cause of action is asserted against all Defendants and is asserted in addition and in the alternative to Count I-IV, *infra*.

50.      Section 1962(c) of Title 18 of the U.S. Code makes it illegal for "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

51.      Each of the Defendants was, and is, a person within the meaning of 18 U.S.C. §§ 1961(3), 1962 (c), and 1964(c).

52.      Defendants has constituted an enterprise within the meaning of 18 U.S.C. § 1961(4).  Defendants formed several limited liability companies for the purpose of facilitating, committing, perpetuating, and concealing the fraudulent and other criminal conduct alleged herein with the aim of unlawfully depriving Plaintiff of his funds.  By forming the several limited liabilities, Defendants attempted to wall off its illegal activities.

53.      Defendants conducted or participated in, directly or indirectly, the management or operations of the limited liability companies and their affairs through a "patterns of racketeering activity" within the meaning of 18 U.S.C. § 1961(5) and in violation of 18 U.S.C. § 1962(c); to wit, they have consistently and regularly committed multiple predicate acts of racketeering activity within the meaning of 18 U.S.C. § 1961(1)(B), (D) and/or conspired with other Defendants to commit and/or aided and abetted other Defendants' commission of the same, since at least 2018 and continuing to the present day.

54.     Defendants were engaged in, and their activities affected, interstate commerce.  In furtherance of the scheme, Defendants transmitted, or caused to be transmitted, by means of wire communication in interstate or foreign commerce, writings, signals, pictures, and sounds, in violation of 18 U.S.C. § 1343.

55.     Defendants engaged in a scheme to defraud Plaintiff and others in violation of 18 U.S.C. § 1343.   Defendants systematically made disclosures to Plaintiff by means of wire communication that Defendants knew to be materially false, incomplete, or misleading in that such statement omitted, concealed, or distorted facts about the La Rossa project. Defendants made the false statements with the intent to defraud Plaintiff out of money.  Plaintiff suffered substantial losses in reliance to Defendants' false statements.

56.     Defendants are liable for violating 18 U.S.C. §§ 1956 and 1957 in that Defendants have remitted directly or indirectly to their U.S. and foreign entities in amounts exceeding $10,000.00.   Defendants knew that such financial transactions involved amounts exceeding $10,000.00 and that such monies were criminally derived from specified unlawful activity within the meaning of 18 U.S.C. § 1956(c)(7), and 18 U.S.C. §1957(f)(3).   Such specified unlawful includes, *inter alia*, the violations of  18 U.S.C. §1343 as set forth above. The specific chains of monetary and financial transactions are within Defendants' exclusive knowledge and will be identified in discovery and proven at trial.

57.     Defendants initiated or concluded, or participated in initiating or concluding, a financial transaction. Defendants knew, or were reckless in failing to know, that the property involved was the proceeds of felonious acts under State, Federal or foreign law.

58.     Defendants have the motive to commit the violations of 18 U.S.C. §§ 1343, 1956, and 1957 in that Defendants stood to earn hundreds of thousands of dollars from Plaintiff's investment.

59.     As a direct and proximate results of 18 U.S.C. § 1962(c) violations by the Defendants, Plaintiff has been injured in its business or property, suffering damages in an amount to be determined at trial. The damages to Plaintiff include, but are not limited to, lost business opportunities; attorneys' fees and costs, including attorneys' fees and costs associated with exposing and pursuing redress for Defendants' criminal activities.

**COUNT VI**
*Fraudulent Misrepresentation*
*Against all Defendants*

60.     Plaintiff incorporates ¶¶ 1- 59 by reference.

61.     In furtherance of offering and selling securities to Plaintiff, Defendants made several false statements, misrepresentations and omissions that materially impaired Plaintiff's decision making as stated above.

62.     Defendants knew, or were reckless in failing to know, that the statements were false.

63.     Defendants knew and intended for Plaintiff to rely on the false statements, misrepresentations and omissions.

64.     Plaintiff reasonably relied on Defendants' false statements made by Defendants.

65.     Plaintiff's reliance on false statements, misrepresentations, or omissions directly caused Plaintiff to suffer more than $500,000.00.

66.     Plaintiff seeks punitive damages to deter Defendants because Defendants' conduct amounts to such gross, wonton or willful fraud, dishonesty and malicious wrongdoing as to involve a high degree of moral culpability, making it appropriate to deter defendants from engaging in similar conduct in the future.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment as follows:

A.      Rescission of  the investment contracts and recover the consideration, including interest;

B.      Awarding Plaintiff damages, including interest;

C.      Awarding Plaintiff reasonable costs and attorneys' fees; and

D.      Punitive damages;

E.      Treble damages;

F.      Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered or to entertain any suitable application of motion for additional relief within the jurisdiction of this Court.

G.      Awarding such equitable/injunctive or other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: June 21, 2019                        Respectfully submitted,

_____
Andrea Natale, Esq.
New York Bar No. 5638952
Law Office of Andrea Natale, Esq. PLLC
17 State Street, Suite 4000
New York, NY 10004
Tel: 212.739.0172
Fax: 1.800.549.3752
Email: anatale@natalesq.com