UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
FRANCESCO ZANGHI and ZANGHI LLC,

                    Plaintiffs,

                                          **MEMORANDUM AND ORDER**

          - against -
                                          19 Civ. 5830 (NRB)

PIERGRAZIANO RITELLA, GIUSEPPE
CAVALLARO, ALESSANDRO VACCA, FUTURA
HOSPITALITY LLC, STUDIO LEGALE
CAVALLARO, and GIOIA E VITA S.R.L.,

                    Defendants.
-----------------------------------X
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**


     Piergraziano Ritella, Giuseppe Cavallaro, Alessandro Vacca,
and Gioia e Vita S.r.L. (collectively, the "moving defendants")
move to dismiss the complaint of Francesco Zanghi and Zanghi LLC
(together, "plaintiffs") for insufficient service of process.  The
motion is granted in part and denied in part for the reasons stated
herein.

                         **BACKGROUND**

     Moving defendant Piergraziano Ritella is an Italian citizen
and the Managing Member of nonmoving defendant Futura Hospitality
LLC, a New York limited liability company.  Compl. ¶ 14.  Moving
defendant Giuseppe Cavallaro is an Italian attorney at nonmoving
defendant Studio Legale Cavallaro, a law firm in Rome.  Compl. ¶
5; ECF No. 27.  Moving defendant Alessandro Vacca is an Italian

1

citizen and the Managing Member of moving defendant Gioia e Vita S.r.L. ("Gioia e Vita"), an Italian società a responsabilità limitata. Compl. ¶ 15.

On June 21, 2019, plaintiffs filed a complaint against the moving defendants, Futura Hospitality LLC, and Studio Legale Cavallaro (collectively, "defendants") for, among other things, alleged violations of the Racketeer Influenced and Corrupt Organizations Act, the Securities Act of 1933, and the Securities Exchange Act of 1934. See Compl. ¶¶ 30-59. Broadly described, the complaint alleges that defendants defrauded plaintiffs into investing in pizzerias in New York City and Miami. See, e.g., Compl. ¶¶ 40-47.

Plaintiffs hired a process server to deliver the summons and the complaint to Ritella at the Brooklyn apartment in which he was then living. ECF No. 22 (Affidavit of Service); Opp. at 12. According to the affidavit of service, on July 1, 2019, the process server tried to deliver the documents to Ritella, but the doorman for Ritella's apartment building -- who identified himself as Ritella's doorman but refused to state his full name -- denied the process server access to the building. Id. The process server left the documents with the doorman. Id. Then, on July 3, the process server mailed the summons and the complaint to Ritella's Brooklyn apartment in a nondescript envelope bearing the legend

"PERSONAL & CONFIDENTIAL." Id. Ritella returned to Italy after his U.S. visa expired in August 2019. Opp. at 12.

Whereas Ritella was in the United States when plaintiffs attempted to serve him, Cavallaro, Vacca, and Gioia e Vita were in Italy, and plaintiffs tried to serve them using two methods. First, plaintiffs mailed the summonses and the complaint using FedEx International Priority shipping. See ECF No. 31, Exs. 2 & 9. To obtain Cavallaro's address, plaintiffs obtained a Certificado di Residenza from Rome's Servizi Anagrafici e Stato Civile. ECF No. 31, Ex. 4. Plaintiffs' FedEx mailing to that address was signed for by "CASSETTA POSTALE CAV." ECF No. 31, Exs. 2 & 4. The shipment to Gioia e Vita was sent to Studio Legale Cavallaro's office in Rome, which plaintiffs attest was Gioia e Vita's administrative headquarters. ECF No. 26 (Affidavit of Service); Pls.' Mem. at 2. "M ZACARIA" signed for the mailing to Gioia e Vita. ECF No. 31, Ex. 2. While the FedEx mailings to Cavallaro and Gioia e Vita were delivered to the addresses to which plaintiffs had sent them, plaintiffs concede that the FedEx mailing to Vacca was never delivered. Pls.' Mem. at 2; see also ECF No. 31, Ex. 9.

Second, plaintiffs attempted to serve Cavallaro, Vacca, and Gioia e Vita using an Italian email system called posta elettronica certificate, or PEC. See ECF No. 31, Ex. 1 (emails from

andrea.natale.esq@pec.it to various email addresses notifying them "that a lawsuit has been filed against you" and attaching the complaint and other documents).

On July 18, 2019, Rocco Lamura, an attorney in New York City, filed a notice of appearance on behalf of defendants. ECF No. 23. Several days later, he filed a letter requesting leave to file a motion to dismiss plaintiffs' complaint for, among other things, insufficient service of process. The Court requested that initial briefing be limited to whether plaintiffs had adequately served the moving defendants.

While the motion was pending, Lamura moved to withdraw as counsel for defendants. See ECF No. 38. In his motion, Lamura explained that there had been a "severe breakdown of mutual trust, confidence, and respect" due to defendants' alleged failure to pay his fees "and other significant internal matters," and that his relationship with defendants had been "[t]arnished" and "detrimentally changed." ECF No. 38 at 2.

## DISCUSSION

Although Rocco Lamura has moved to withdraw as counsel for defendants, the moving defendants' motion to dismiss the complaint for "insufficient service of process" remains pending. Fed. R. Civ. P. 12(b)(5). "On a Rule 12(b)(5) motion to dismiss, the plaintiff bears the burden of establishing that service was

sufficient." <u>Khan v. Khan</u>, 360 Fed. App'x 202, 203 (2d Cir. 2010) (citing <u>Burda Media, Inc. v. Viertel</u>, 417 F.3d 292, 298 (2d Cir. 2005)). When determining whether a plaintiff has met its burden, the Court may review material outside the pleadings, including affidavits and other supporting materials. <u>See</u> <u>Mende v. Milestone Tech., Inc.</u>, 269 F.Supp. 2d 246, 251 (S.D.N.Y. 2003).

"In deciding a Rule 12(b)(5) motion, [the] Court must look to [Federal] Rule [of Civil Procedure] 4, which governs the content, issuance, and service of a summons." <u>DeLuca v. AccessIT Grp., Inc.</u>, 695 F.Supp. 2d 54, 64 (S.D.N.Y. 2010). The Court first determines whether plaintiffs have demonstrated that service on Ritella in the United States was proper under Rule 4. It then addresses whether service on Cavallaro, Vacca, and Gioia e Vita in Italy complied with Rule 4.

**A. Service of Process on Ritella**

Plaintiffs claim to have served Ritella under Rule 4(e)(1), which provides that "an individual . . . may be served in a judicial district of the United States by . . . following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). Specifically, plaintiffs contend that they served Ritella in the Eastern District of New York consistent with New York Civil Law and Practice Rules

§ 308(2), which permits "service upon a natural person . . . by [1] delivering the summons within the state to a person of suitable age and discretion at the actual . . . dwelling place or usual place of abode of the person to be served and [2] . . . mailing the summons to the person to be served at his or her last known residence . . . in an envelope bearing the legend 'personal and confidential' and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served, such delivery and mailing to be effected within twenty days of each other . . . ." N.Y. C.P.L.R. § 308(2).

The Court agrees that plaintiffs properly served Ritella. Under New York law, "if a process server is not permitted to proceed to the actual apartment by the doorman or some other employee, the outer bounds of the actual dwelling place must be deemed to extend to the location at which the process server's progress is arrested." F.I. duPont, Glore Forgan & Co. v. Chen, 364 N.E.2d 1115, 1117 (N.Y. 1977). In such a scenario, the doorman constitutes "a person of suitable age and discretion" upon whom service can be made. See F.I. duPont, 364 N.E.2d at 1117–18. Consequently, plaintiffs' process server was entitled to serve the summons and the complaint on Ritella's doorman because the doorman had refused access to Ritella's apartment. Moreover, two days

after serving Ritella's doorman, the process server mailed copies of the summons and the complaint to Ritella's apartment in a nondescript envelope bearing the legend "PERSONAL & CONFIDENTIAL." See ECF No. 22 (Affidavit of Service) (describing the July 3 mailing to Ritella).

Accordingly, service on Ritella met the requirements of § 308(2), hence, service on him was also proper under Rule 4(e)(1).

## B. Service of Process on Cavallaro, Vacca, and Gioia e Vita under Rule 4(f)(2)(A)

The sole basis on which plaintiffs claim to have served Cavallaro, Vacca, and Gioia e Vita is Federal Rule of Civil Procedure 4(f)(2)(A).[1] Specifically, plaintiffs maintain that their FedEx shipments and PEC emails to those defendants met the requirements of that provision.

Under Rule 4(f)(2)(A), "an individual . . . may be served at a place not within any judicial district of the United States

---

[1] The Court agrees that no other provision of Rule 4(f), which governs international service of process, applies. Rule 4(f)(1) is inapposite because the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents (the "Hague Convention") does not authorize service by email or mail, which are the means by which plaintiffs claim to have served Cavallaro, Vacca, and Gioia e Vita. See Water Splash, Inc. v. Menon, 137 S. Ct. 1504, 1513 (2017) (explaining that mail is not an authorized form of service under the Hague Convention). Rules 4(f)(2)(B) and 4(f)(2)(C) are also inapplicable as plaintiffs neither filed a letter rogatory nor letter of request with an Italian authority, nor did they use the Clerk of Court to send their mailings. Finally, Rule 4(f)(3), which permits service "by other means not prohibited by international agreement, as the court orders," Fed. R. Civ. P. 4(f)(3), does not apply because it "requires plaintiffs to obtain court approval before attempting such alternative service." F.T.C. v. Pecon Software Ltd., No. 12 Civ. 7186 (PAE), 2013 WL 4016272, at *9 (S.D.N.Y. Aug. 7, 2013) (emphasis in original) (collecting cases).

. . . if [1] an international agreement allows but does not specify other means, [2] by a method that is reasonably calculated to give notice . . . [and] [3] as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction." Fed. R. Civ. P. 4(f)(2)(A). The first proviso of Rule 4(f)(2)(A) requires that an international agreement permit the method of service and that the agreement's procedures not be the exclusive means for service of process on defendants residing in the signatory nation. SeaCube Containers LLC v. Compass Conainers & Shipping Servs. Ltda., No. 19 Civ. 816 (JPO), 2019 WL 3451202, at *2 (S.D.N.Y. July 31, 2019); see also 4B Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1133 (4th ed.).

The third element of Rule 4(f)(2)(A) requires that the plaintiff demonstrate that service complied with the recipient country's laws for service of process. See, e.g., In re Coudert Bros. LLP, No. 16 Civ. 8237 (KMK), 2017 WL 1944162, at *11 (S.D.N.Y. May 10, 2017) (finding plaintiff failed to effect mail service in Hong Kong under Rule 4(f)(2)(A) because the mailing did not comport with Hong Kong's mail service laws); Ansell Healthcare, Inc. v. Maersk Line, 545 F.Supp. 2d 339, 342 (S.D.N.Y. 2008) (concluding that plaintiff failed to effect mail service in Thailand under Rule 4(f)(2)(A) because it did not obtain a prior court order for mail service as required under Thai law); Ty v.

<u>Celle</u>, No. 95 Civ. 2631 (MBM), 1996 WL 452408, at *3 (S.D.N.Y. Aug. 9, 1996) (rejecting service by registered mail to the Philippines under Rule 4(f)(2)(A) because a "sheriff or other proper court officer" did not send the mailing, as required under Philippine law); <u>see also</u> 4B Charles Alan Wright & Arthur R. Miller, <u>Fed. Prac. & Proc.</u> § 1134 n.19 (4th ed.) (collecting cases).

Although Rule 4(f)(2)(A) applies to "individual[s]," Rule 4(h) extends it to "foreign corporation[s]." Fed. R. Civ. P. 4(h). Rule 4(f)(2)(A) therefore applies to Gioia e Vita because it is an Italian S.r.L.

Moreover, "if [service was] made under Rule 4(f)(2)," then it "must be proved . . . by a receipt signed by the addressee, or by other evidence satisfying the court that the summons and complaint were delivered to the addressee." Fed. R. Civ. P. 4(<u>l</u>). The 90-day time limit for completing service of process does not apply to Rule 4(f)(2)(A). Fed. R. Civ. P. 4(m).

## 1. Plaintiffs' FedEx Mailings to Cavallaro, Vacca, and Gioia e Vita

As an initial matter, plaintiffs have failed to serve Vacca under Rule 4(f)(2)(A) because FedEx was unable to deliver the shipment to its addressee. <u>See</u> Fed. R. Civ. P. 4(<u>l</u>) (requiring under Rule 4(f)(2) "evidence . . . that the summons and complaint were delivered to the addressee.").

Plaintiffs have also failed to demonstrate that their FedEx International Priority shipments to Cavallaro and Gioia e Vita complied with Italian law, as Rule 4(f)(2)(A)'s second element requires. Plaintiffs did not supply the Court with a legal opinion on, or certified translations of, Italian law. See, e.g., Ansell Healthcare, Inc., 545 F.Supp. 2d at 342 (relying on legal opinion from Thai attorney to conclude that service did not comport with Thai law and was therefore improper under Rule 4(f)(2)(A)). Instead, plaintiffs cite an uncertified translation of a provision of the Italian Code of Civil Procedure that reads, "'[i]f the law does not expressly prohibit it, the notification can also be made via the postal service.'" Pls.' Mem. at 4 n.8. Assuming the accuracy of this translation, there is no indication that the notification of which the provision speaks concerns the initiation of a lawsuit against its recipient. Moreover, the provision's prefatory clause -- "[i]f the law does not expressly prohibit it" -- indicates that there are circumstances in which Italian law prohibits sending the notification by email.

In fact, in arguing that plaintiffs have failed to serve them by mail consistent with Rule 4(f)(2)(A), Cavallaro, Vacca, and Gioia e Vita maintain that plaintiffs failed to comply with Italian law. For example, they assert that Italian law required plaintiffs to obtain a court order permitting mail service from an

Italian court, and that it obligated them to use Italian postal service provider Poste Italiane for the mailings. <u>See</u> Opp. at 8-9, 17.[2] Remarkably, in response to these contentions and notwithstanding Rule 4(f)(2)(A)'s contrary language, plaintiffs erroneously asserted that "whether service complie[d] with Italian law is irrelevant." Pls.' Reply at 2.

Plaintiffs have therefore failed to establish that their FedEx International Priority shipments to Cavallaro and Gioia e Vita complied with Italian law, hence, they have failed to meet their burden under Rule 4(f)(2)(A) of demonstrating such compliance. Accordingly, the Court cannot deem service proper under that Rule. <u>See, e.g.</u>, <u>Wyndham Hotel Grp. Canada, ULC v. 683079 Ontario Ltd.</u>, Civil Action No. 17-4000 (JMV), 2018 WL 2078704, at *6 (D.N.J. May 4, 2018) (concluding that plaintiff failed to establish service under Rule 4(f)(2)(A) because the plaintiff failed to "provide analysis of methods of proper service for Canadian courts of general jurisdiction"); <u>Julien v. Williams</u>, No. 10 Civ. 2358 (SCB), 2010 WL 5174535, at *3 (M.D. Fla. Dec. 15, 2010) (doing the same where the parties had failed to supply British law governing mail service).

---

[2] The moving defendants also failed to provide the Court with certified translations or a legal opinion on Italian law.

## 2. Plaintiffs' Emails to Cavallaro, Vacca, and Gioia e Vita Through Italy's PEC Email System

Plaintiffs have also failed to demonstrate that their emails to Cavallaro, Vacca, and Gioia e Vita complied with Italian law. Neither party has supplied the Court with the rules governing the use of Italy's PEC system, certified translations of pertinent Italian law, or a legal opinion on email service in Italy. Instead, plaintiffs cite yet another uncertified translation of the Italian Civil Procedure Code, which reads, "'[u]nless otherwise expressly prohibited by law, the notification can be carried out by certified email system.'" Pls.' Mem. at 4 n.9. This uncertified translation is deficient for the same reasons as the previous one. Moreover, in opposing email service, Cavallaro, Vacca, and Gioia e Vita again contend that plaintiffs failed to comport with Italian law. See, e.g., Opp. at 17-18. Plaintiffs' reply, which contained a hodgepodge of uncertified translations of Italian laws that bore a questionable relation to the propriety of email service here, only further muddled the question. See, e.g., Pls.' Reply at 8-9. The Court is therefore unable left unable to discern whether service was proper under Italian law, and therefore cannot conclude that service was proper under Rule 4(f)(2)(A).

Even if plaintiffs could demonstrate that their emails complied with Italian law, service would still be improper under Rule 4(f)(2)(A) because email is not a permitted method of service

under the Hague Convention.  The international agreement on which plaintiffs rely to satisfy the first element of Rule 4(f)(2)(A) is the Hague Convention, a multilateral treaty to which both the United States and Italy are signatories.  Hague Convention, Nov. 15, 1965, 20 U.S.T. 361 (listing signatories).  As one would expect for a treaty ratified in 1965, the Hague Convention does not address service by email.  Clever litigants have accordingly argued that email is a "postal channel[]" within the meaning of Article 10(a) of the Hague Convention, which states that "[p]rovided the State of destination does not object, the present Convention shall not interfere with . . . the freedom to send judicial documents, by postal channels, directly to persons abroad."  Id. art. 10(a).

However, most courts that have considered that argument, including all pertinent decisions from the Southern District of New York, have rejected it.  See, e.g., Sulzer Mixpac AG v. Medenstar Indus. Co. Ltd., 312 F.R.D. 329, 331-32 (S.D.N.Y. 2015) (concluding that an objection to Article 10(a)'s service by "postal channels" does not encompass an objection to service by email); U.S. v. Besneli, No. 14 Civ. 7339 (JFK), 2015 WL 4755533, at *2 (S.D.N.Y. Aug. 12, 2015) (same); F.T.C. v. PCCare247 Inc., No. 12 Civ. 7189 (PAE), 2013 WL 841037, at *4 (S.D.N.Y. Mar. 7, 2013) (same); see also, e.g., AMTO, LLC v. Bedford Asset Mgmt., LLC, No.

13

14 Civ. 9913 (KMK), 2015 WL 3457452, at *7 (S.D.N.Y. June 1, 2015) (collecting cases).  The Court finds the reasoning of these cases persuasive and joins them in concluding that "postal channels" do not encompass email.  Consequently, email is not a permitted method of service under the Hague Convention, and therefore cannot be used to satisfy Rule 4(f)(2)(A).

The Court accordingly finds that plaintiffs have failed to serve Cavallaro, Vacca, and Gioia e Vita by email under Rule 4(f)(2)(A).

## C. Alternative Methods of Service under Rule 4(f)(3)

Plaintiffs ask the Court to exercise its discretion under Rule 4(f)(3) to authorize alternative methods of service on Cavallaro, Vacca, and Gioia e Vita.  Specifically, plaintiffs request an order permitting them to serve Cavallaro by email at studiolegalecavallaro@live.it and Vacca and Gioia e Vita by email at alessandrovcc@gmail.com, or to serve their U.S. counsel, Rocco Lamura.

Under Rule 4(f)(3), a defendant may be served outside the United States "by other means not prohibited by international agreement, as the court orders."  Fed. R. Civ. P. 4(f)(3). Service under Rule 4(f)(3) "is neither a last resort nor extraordinary relief.  It is merely one means among several which enables service of process on an international defendant."  Sulzer

Mixpac AG, 312 F.R.D. at 330 (internal quotation marks omitted). "The decision whether to allow alternative methods of serving process under Rule 4(f)(3) is committed to the sound discretion of the district court." Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria, 265 F.R.D. 106, 115 (S.D.N.Y. 2010).

"An alternative method of service under Rule 4(f)(3) 'is acceptable if it (1) is not prohibited by international agreement; and (2) comports with constitutional notions of due process.'" Fisher v. Petr Konchalovsky Found., No. 15 Civ. 9831 (AJN), 2016 WL 1047394, at *2 (S.D.N.Y. Mar. 10, 2016) (quoting U.S. S.E.C. v. China Intelligent Lighting & Elecs., Inc., No. 13 Civ. 5079 (JMF), 2014 WL 338817, at *1 (S.D.N.Y. Jan. 30, 2014)). "[A] means of service comports with due process if it is 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" Id. at *2 (quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)).

The Hague Convention does not prohibit service on a foreign defendant's U.S. counsel or service by email. See, e.g., RSM Prod. Corp. v. Fridman, No. 06 Civ. 11512 (DLC), 2007 WL 2295907, at *3 (S.D.N.Y. Aug. 10, 2007) ("The Hague Service Convention does not prohibit an order pursuant to Rule 4(f)(3) permitting service through American counsel."); Sulzer Mixpac AG, 312 F.R.D. at 331-

15

32 (finding that Hague Convention does not prohibit service by email). Moreover, the Court is unaware of, nor has either party identified, any other international agreement between the United States and Italy that prohibits such methods of service. Thus, no international agreement between the United States and Italy prohibits service by email or on a foreign defendant's U.S. counsel, and the Court addresses in turn whether plaintiffs' requested means of service comport with due process.

### 1. Email Service on Studiolegalecavallaro@live.it and Alessandrovcc@gmail.com

"Service by email alone comports with due process where a plaintiff demonstrates that the email is likely to reach the defendant." Pecon Software Ltd., 2013 WL 4016272, at *5. Thus, "[a]s a general matter, 'in those cases where service by email has been judicially approved, the movant supplied the Court with some facts indicating that the person to be served would be likely to receive the summons and complaint at the given email address.'" NYKCool A.B. v. Pac. Int'l Servs., Inc., 66 F.Supp. 3d 385, 391 (S.D.N.Y. 2014), adhered to on recons., No. 12 Civ. 5754, 2015 WL 998455 (S.D.N.Y. Mar. 5, 2015) (quoting Fortunato v. Chase Bank USA, N.A., No. 11 Civ. 6608 (JFK), 2012 WL 2086950, at *2 (S.D.N.Y. June 7, 2012)). "'Although courts have upheld service via e-mail, those cases involved e-mail addresses undisputedly connected to the defendants and that the defendants used for business

16

purposes.'" <u>NYKCool A.B.</u>, 66 F.Supp. 3d at 391 (quoting <u>Ehrenfeld v. Salim a Bin Mahfouz</u>, No. 04 Civ. 9641 (RCC), 2005 WL 696769, at *3 (S.D.N.Y. Mar. 23, 2005)).

Plaintiffs have offered sufficient evidence that an email to studiolegalecavallaro@live.it would be reasonably calculated to reach Cavallaro. As recently as June 2019, Cavallaro sent an email from that address in his capacity as non-moving defendant Futura Hospitality LLC's attorney. <u>See</u> ECF No. 31, Ex. 5. Cavallaro's recent use of the address indicates that an email to it is likely to reach him. <u>See, e.g.</u>, <u>PCCare247 Inc.</u>, 2013 WL 841037, at *4 (finding "a high likelihood that defendants will receive and respond to emails" where there was "confirmation that at least one of [various] email accounts was recently in use by [a] specified defendant"). Moreover, Cavallaro's email concerned the dispossession of Futura's tenancy in Miami, <u>see</u> ECF No. 31, Ex. 5, which implicates one of the factual bases for plaintiffs' claims -- namely, defendants' failure to disclose issues with that tenancy prior to plaintiffs' $100,000 investment in Futura, <u>see</u> Compl. ¶ 45. Cavallaro accordingly used studiolegalecavallaro@live.it to conduct business relating to plaintiffs' claims, which reinforces that an email to that address would likely inform Cavallaro about this lawsuit. <u>See</u> <u>NYKCool A.B.</u>, 66 F.Supp. 3d at 391 (noting "an important distinction

between e-mail addresses that are the mechanisms by which defendants conduct business and e-mail addresses that are only used as an informal means of accepting requests for information" and permitting service by email only on the former (internal quotation marks and alterations omitted)).

By contrast, plaintiffs have not offered sufficient evidence that an email to alessandrovcc@gmail.com would be reasonably calculated to reach Vacca or Gioia e Vita. Plaintiffs rely on an invoice for time billed by defendants' U.S. counsel in this litigation that states "GIOIA E VITA SRL VIA EMAIL: alessandrovcc@gmail.com" and lists the name "Alessandro Vacca" under the email address. See ECF No. 31, Ex. 6. As a preliminary matter, it is not apparent how plaintiffs obtained a bill from defense counsel to defendants, which raises serious concerns about the document's reliability. In any event, even if the invoice is what it purports to be, it does not establish that alessandrovcc@gmail.com "is operational and accessed" by Gioia e Vita or Vacca, Fortunato, 2012 WL 2086950, at *2, or that it is "actually linked" to either of those defendants, Fisher, 2016 WL 1047394, at *3. Absent such a connection, the invoice does not persuade the Court that Vacca or Gioia e Vita use the email address. Cf. China Intelligent Lighting, 2014 WL 338817, at *2 (refusing to authorize email service under Rule 4(f)(3) based on

a spreadsheet purporting to list the defendant's email address without further information from which to conclude that the defendant used the email address). It is therefore speculative whether an email to it would reach them.

The Court accordingly exercises its discretion under Rule 4(f)(3) to permit plaintiffs to serve Cavallaro by email at studiolegalecavallaro@live.it, but it declines to exercise that discretion to permit plaintiffs to serve Vacca and Gioia e Vita at alessandravcc@gmail.com.

### 2. Service on Rocco Lamura

While service on a foreign defendant's U.S. counsel "is a common form of service ordered under Rule 4(f)(3)," Jian Zhang v. Baidu.com Inc., 293 F.R.D. 508, 515 (S.D.N.Y. 2013), courts require that the circumstances indicate that U.S. counsel will inform the foreign defendant of the action. See, e.g., In GLG Life Tech Corp. Sec. Litig., 287 F.R.D. 262, 267 (S.D.N.Y. 2012) (ordering service on U.S. counsel under Rule 4(f)(3) where "the circumstances of th[e] case ma[de] clear that service on counsel . . . [was] virtually guaranteed to provide notice to" the defendant); NYKCool A.B. v. Pacific Int'l Servs., Inc., No. 12 Civ. 5754 (LAK), 2015 WL 998455, at *4 (S.D.N.Y. Mar. 5, 2015) (same where it was "clear that [defendant's] lawyers are in touch with him" and it was "difficult to imagine evidence more clearly demonstrating . . .

[defendant's] . . . interaction with his lawyers"); <u>RSM Prod. Corp.</u> <u>v. Fridman</u>, No. 06 Civ. 11512 (DLC), 2007 WL 2295907, at *6 (S.D.N.Y. Aug. 10, 2007) (same where "Akin Gump's relationship with Fridman [was] well established and extend[ed] beyond any limited appearance in this lawsuit."); <u>Atlantica Holdings, Inc. v.</u> <u>BTA Bank JSC</u>, No. 13 Civ. 5970 (JMF), 2014 WL 12778844, at *3 (S.D.N.Y. Mar. 31, 2014) (same where U.S. counsel had historically represented the defendant, including "both the 2010 restructuring that gave rise to this lawsuit and the bankruptcy proceedings that delayed the lawsuit."); <u>Wash. State Inv. Bd. v. Odebrecht S.A.</u>, No. 17 Civ. 8118 (PGG), 2018 WL 6253877, at *5 (S.D.N.Y. Sep. 21, 2018) (same where U.S. counsel represented the defendant "in the related criminal proceeding" and "in a recent securities fraud class action in this District," and also "represent[ed] three [of the defendant's] subsidiaries in the instant case.").

The circumstances do not so indicate here. Lamura's pending motion for withdrawal describes a "severe breakdown of mutual trust, confidence, and respect" due to defendants' alleged failure to pay his fees "and other significant internal matters." ECF No. 38 at 2. He describes his relationship with defendants as "[t]arnished" and "detrimentally changed." ECF No. 38 at 2. In this scenario -- where Lamura has moved to withdraw based on the collapse of his relationship with defendants -- the Court cannot

conclude that service on him is reasonably calculated to apprise defendants of this lawsuit. The Court accordingly declines to exercise its discretion under Rule 4(f)(3) to permit plaintiffs to serve Cavallaro, Vacca, and Gioia e Vita by serving Rocco Lamura.

### CONCLUSION

The moving defendants' motion to dismiss is granted in part and denied in part for the reasons stated herein. While plaintiffs have properly served Ritella, they have failed to serve Cavallaro, Vacca, and Gioia e Vita. The Court nonetheless exercises its discretion under Rule 4(f)(3) to allow plaintiffs to serve Cavallaro by email at studiolegalecavallaro@live.it. In addition to the summons and the complaint, the email must attach a copy of this Memorandum and Order, inform Cavallaro that the Court has authorized service on him at studiolegalecavallaro@live.it, and warn Cavallaro that failure to respond could result in a default judgment being entered against him for some or all of the relief sought in the complaint. The Clerk of Court is respectfully directed to terminate any motions pending in this case.

**SO ORDERED.**

Dated:     New York, New York
          February _5_, 2020

                              NAOMI REICE BUCHWALD
                              UNITED STATES DISTRICT JUDGE